Versión para imprimir

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Milagros Sánchez Collazo<br><br>     Recurrida<br><br>     v.<br><br>Departamento de la Vivienda<br><br>     Peticionarios<br>_____<br><br>Departamento de Corrección y Rehabilitación<br><br>     Peticionario<br><br>     v.<br><br>Diana Malbert Candelario, Representada por la Unión General de Trabajadores (UGT)<br><br>     Recurrida<br>_____<br><br>Luis Villegas León<br><br>     Recurrido<br><br>     v.<br><br>Departamento de la Vivienda<br><br>     Peticionario<br>_____<br>Pablo Barreto Pérez<br><br>     Recurrido<br><br>     v.<br><br>Departamento de Transportación y Obras Públicas y la Junta de Reestructuración Fiscal de Puerto Rico<br><br>Peticionario | Certiorari<br><br>2011 TSPR 205<br><br>184 DPR ____ |

Número del Caso:    CC-2010-1005
                       CC-2011-260
                       CC-2011-548
                       CC-2011-698

Fecha: 22 de diciembre de 2011

CC-2010-1005

Tribunal de Apelaciones:

                  Región Judicial de San Juan, Panel I

Juez Ponente:        Hon. Luis R. Piñero González


Oficina de la Procuradora General:

                  Lcda. Irene Zoroeta Kodesh
                  Procuradora General

                  Lcda. Jannelle M. Laforet Ramos
                  Procuradora General Auxiliar

Abogados de la Parte Recurrida:

                  Lcda. Vivian Negrón Rodríguez
                  Lcdo. Edwin Rivera Cintrón


CC-2011260

Tribunal de Apelaciones:

                  Región Judicial de San Juan, Panel III

Juez Ponente:        Hon. Erik Ramírez Nazario


Oficina de la Procuradora General:

                  Lcda. Leticia Casalduc Rabell
                  Subprocuradora General

                  Lcda. Vannessa Ramírez
                  Procuradora General Auxiliar

Abogados de la Parte Recurrida:

                  Lcdo. Edwin Rivera Cintrón
                  Lcda. Viviam Negrón Rodríguez

CC-2011-548

Tribunal de Apelaciones:

          Región Judicial de San Juan, Panel III

Juez Ponente:        Hon. Erik Ramírez Nazario

Oficina de la Procuradora General:

          Lcda. Leticia Casalduc Rabell
          Procuradora General

          Lcda. María C. Umpierre Marchand
          Procuradora General Auxiliar

Abogados de la Parte Recurrida:

          Lcda. Vivian Negrón Rodríguez

CC-2011-698

Tribunal de Apelaciones:

          Región Judicial de San Juan, Panel III

Juez Ponente:        Hon. Luis R. Piñero González

Oficina de la Procuradora General:

          Lcda. Leticia Casalduc Rabell
          Procuradora General

          Lcda. María C. Umpierre Marchand
          Procuradora General Auxiliar

Abogados de la Parte Recurrida:

          Lcdo. José Raúl Pérez Ayala

Materia: Ley 7

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Milagros Sánchez Collazo<br><br>Recurrida<br><br>v.<br><br>Departamento de la Vivienda<br><br>Peticionarios<br>_____ | CC-2010-1005 |
| Departamento de Corrección y Rehabilitación<br><br>Peticionario<br><br><br>v.<br><br>Diana Malbert Candelario, Representada por la Unión General de Trabajadores (UGT)<br><br>Recurrida<br>_____ | CC-2011-260 |
| Luis Villegas León<br><br>Recurrido<br><br>v.<br><br>Departamento de la Vivienda<br><br>Peticionario<br>_____<br><br>Pablo Barreto Pérez<br><br>Recurrido<br><br>v.<br><br>Departamento de Transportación y Obras Públicas y la Junta de Reestructuración Fiscal de Puerto Rico<br><br>Peticionario | CC-2011-548 |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 22 de diciembre de 2011.

Debemos analizar si a la Junta de Reestructuración y Estabilización Fiscal (JREF) se le delegó la facultad de establecer una fecha de corte para computar la antigüedad de los empleados públicos afectados por la Ley Núm. 7-2009, mejor conocida como Ley Especial Declarando Estado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico, 3 L.P.R.A sec. 8791 *et seq*. Contestamos en la afirmativa. Por los fundamentos que exponemos a continuación, revocamos los dictámenes del Tribunal de Apelaciones.

I

En aras de preservar la fluidez del análisis, narraremos los hechos de cada uno de los tres casos consolidados por separado.

**CC-2010-1005**

La Sra. Milagros Sánchez Collazo ocupaba el puesto de subdirectora de monitoría de calidad de servicios en el Departamento de la Vivienda. El 21 de abril de 2009 el Departamento de la Vivienda le entregó a la señora Sánchez Collazo una certificación de fecha de antigüedad en la agencia, en la que indicó que su fecha de ingreso al

servicio público fue el 11 de noviembre de 1994 y que su antigüedad total era de 5 años, 4 meses y 3 días. El 7 de mayo de 2009 la señora Sánchez Collazo radicó ante la autoridad nominadora el Formulario de Impugnación de Fecha de Antigüedad conjuntamente con prueba documental que demostró que su antigüedad fue calculada incorrectamente.

Luego de ciertos trámites, el 1 de julio de 2009 el Departamento de la Vivienda le remitió a la señora Sánchez Collazo una certificación final de fecha de antigüedad. En ella, se le indicó a la señora Sánchez Collazo que a la fecha de 17 de abril de 2009 la suma de todos los períodos trabajados en el servicio público, según estableció la Ley Núm. 7, supra, totalizaban 12 años, 11 meses y 19 días. Posteriormente, el 28 de septiembre de 2009 el Departamento de la Vivienda le notificó a la señora Sánchez Collazo que, efectivo el 6 de noviembre de 2009, sería cesanteada de su puesto de trabajo en anuencia con la Ley Núm. 7, supra.

Inconforme con esa determinación, la señora Sánchez Collazo presentó una apelación por derecho propio ante la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH). Allí alegó que ocupaba un puesto de carrera en el Departamento de la Vivienda y que al momento de ser efectiva su cesantía, su antigüedad en el servicio público era de 13 años, 6 meses y 22 días. El Departamento de la Vivienda contestó la apelación y solicitó su desestimación. La señora Sánchez Collazo se opuso y argumentó que su cesantía había sido

contraria a derecho porque no se utilizó exclusivamente el criterio de antigüedad. Además, alegó que la antigüedad debía computarse desde que comenzó a trabajar en el servicio público hasta el día en que cesaría en sus funciones, es decir, hasta el 6 de noviembre de 2009.

El 2 de noviembre de 2009 la JREF emitió la Carta Circular Núm. 2009-16 en la que estableció una antigüedad fija que se utilizaría para decretar las cesantías. Véase el portal interactivo de la JREF: (http://www.jrefpr.com/), última visita, 30 de agosto de 2011. En la Carta Circular Núm. 2009-16 la JREF estableció como fecha de corte de antigüedad para todos los empleados públicos el 17 de abril de 2009.

El 10 de febrero de 2010 el Departamento de la Vivienda presentó ante la CASARH una solicitud de desestimación de la apelación a la cual se opuso la señora Sánchez Collazo. En dicha oposición, la señora Sánchez Collazo señaló que la Ley Núm. 7, supra, no estableció que para el cómputo de la antigüedad se tomara en consideración solamente el tiempo trabajado hasta el 17 de abril de 2009.

El 25 de febrero de 2010, la señora Sánchez Collazo presentó una apelación enmendada. En esa misma fecha se celebró una vista ante la CASARH para dilucidar el estado de los procedimientos. Mediante Minuta y Orden de 25 de febrero de 2010, CASARH hizo constar que la señora Sánchez Collazo había aceptado que la certificación final de antigüedad notificada era correcta, por lo que para

propósitos de la Ley Núm. 7, supra, ésta contaba con 12 años, 11 meses y 19 días de antigüedad.

Posteriormente, el 4 de marzo de 2010 la señora Sánchez Collazo radicó ante la CASARH una moción en cumplimiento de orden, acompañada de sus certificaciones de antigüedad. Solicitó nuevamente que se computara su antigüedad hasta su último día de trabajo, y no meramente hasta el 17 de abril de 2009. El 5 de marzo de 2010 el Departamento de la Vivienda presentó ante la CASARH una resolución sumaria en la cual solicitó el archivo de la apelación. Argumentó que no existía controversia de hechos y que la controversia planteada era de derecho.

Mediante Resolución de 30 de marzo de 2010, la CASARH emitió una Resolución en la que archivó la apelación presentada por la señora Sánchez Collazo. Concluyó que la señora Sánchez Collazo poseía un total de 12 años, 11 meses y 19 días de antigüedad en el servicio público, lo que implicaba que ésta no cumplía con el mínimo de antigüedad requerido por la Carta Circular 2009-16. El 5 de mayo de 2010 la recurrente solicitó la reconsideración, aunque fue denegada.

Inconforme, la señora Sánchez Collazo presentó un recurso de revisión judicial ante el Tribunal de Apelaciones. En esencia, sostuvo que la CASARH erró al archivar la apelación sin dilucidar la alegación de que se debe computar su antigüedad hasta el último día de empleo y no hasta el 17 de abril de 2009. Por consiguiente, indicó

que se le debía permitir presentar evidencia sobre la antigüedad que tenía hasta la fecha de su cesantía el 6 de noviembre de 2009.

El 29 de octubre de 2010, una mayoría del panel de jueces del Tribunal de Apelaciones (Hons. Ramírez Nazario y Piñero González) revocó la decisión de la CASARH y concluyó que

> al momento de entrar en vigor la cesantía de la señora Sánchez [Collazo], el 6 de noviembre de 2009, ésta contaba con trece (13) años seis (6) meses y veintidós (22) días en el servicio público. Es decir, que a la fecha de su cesantía la señora Sánchez [Collazo] tenía una antigüedad real en el servicio público que le permitía quedar exenta del plan de cesantías.
>
> De lo anterior se desprende que aunque la recurrente [señora Sánchez Collazo] se mantuvo prestando servicios en el Departamento [de la Vivienda] desde el 17 de abril de 2009 hasta el 6 de noviembre del mismo año, fecha en que fue efectiva su cesantía, de conformidad con la Carta Normativa de [la] JREF del 2 de noviembre de 2009, ese periodo no se contabilizó para computar su verdadera antigüedad, por lo que dicho organismo en términos reales declaró "inexistente" dicho periodo que fue realmente trabajado por la señora Sánchez [Collazo]. Si bien la Ley Núm. 7, supra, le confirió facultad a [la] JREF para instrumentar el plan de cesantías, dicho mandato legislativo estableció expresamente que el mismo debía ponerse en vigor de conformidad con el criterio de antigüedad.
>
> Apéndice, págs. 15-16. (Énfasis suprimido e intercalado nuestro.)

En otras palabras, una mayoría del panel del foro apelativo intermedio entendió que a la JREF no se le otorgó la facultad de establecer una fecha de corte para computar la antigüedad de los empleados públicos. El Juez Figueroa Cabán emitió un voto disidente en el que expresó que "[s]i

la JREF no tiene facultad de establecer la fecha límite de vigencia de un despido, la delegación de poder se convertiría en un ejercicio fútil e inconsecuente. Dicha conducta no sería consistente ni con las declaraciones del legislador en la Exposición de Motivos de la Ley Núm. 7, ni con los principios básicos de hermenéutica que reconocen que los actos legislativos tienen que estar animados hacia la consecución de un propósito determinado". Apéndice, pág. 24.

Inconforme con la decisión del Tribunal de Apelaciones, el Estado presentó un recurso de *certiorari* ante nos. En él, solicita que se revoque la sentencia emitida por el Tribunal de Apelaciones. Sostiene que el legislador, por virtud de la Ley Núm. 7, supra, delegó a la JREF la facultad de establecer una fecha de corte para computar la antigüedad de los empleados públicos. El 24 de noviembre de 2010 emitimos una Resolución en auxilio de nuestra jurisdicción en la que paralizamos los efectos de la sentencia emitida por el Tribunal de Apelaciones y ordenamos a la señora Sánchez Collazo que en treinta días mostrara causa por la cual no se debía expedir el auto de *certiorari* y revocar la sentencia del Tribunal de Apelaciones.

**CC-2011-260**

El 18 de junio de 2009 el Departamento de Corrección y Rehabilitación le notificó a la Sra. Diana Malbert Candelario la determinación final respecto a su antigüedad

en la agencia. Se le indicó que su antigüedad total al 17 de abril de 2009 era de 13 años, 2 meses y 22 días.

El 26 de febrero de 2010 el Departamento de Corrección le notificó a la señora Malbert Candelario que efectivo el 5 de abril de 2010 sería cesanteada de su puesto de conformidad con la Ley Núm. 7, supra.

Inconforme con la determinación del Departamento de Corrección y Rehabilitación, la señora Malbert Candelario presentó el 2 de octubre de 2009 una querella ante la Comisión de Relaciones del Trabajo del Servicio Público. Alegó que al momento de efectividad de la cesantía, su antigüedad en el servicio público era de 14 años, 1 mes y 27 días. Además, argumentó que su cesantía era contraria a derecho porque no se utilizó exclusivamente el criterio de antigüedad. Planteó que la antigüedad debía computarse desde que comenzó a trabajar en el servicio público hasta el día en que cesaría en sus funciones, es decir, hasta el 5 de abril de 2010.

El 6 de mayo de 2010 se celebró una vista de arbitraje ante la Comisión de Relaciones del Trabajo del Servicio Público. Mediante un laudo de 19 de mayo de 2010 una árbitro concluyó que era correcta la certificación de antigüedad emitida por el Departamento de Corrección al 17 de abril de 2009, y que por tanto, la señora Malbert Candelario no cumplía con el mínimo de antigüedad requerido por la Carta Circular Núm. 2009-16 de la JREF.

Inconforme, la señora Malbert Candelario solicitó la revisión del laudo ante el Tribunal de Primera Instancia y sostuvo que la Comisión de Relaciones del Trabajo del Servicio Público erró en la interpretación de la Carta Circular 2009-16 de la JREF.

El 25 de octubre de 2010 el foro primario confirmó el laudo. Determinó que lo propuesto por la señora Malbert Candelario derrotaba el propósito de uniformidad que la JREF quiso impartirle al proceso de cesantías. Además, consideró que la interpretación hecha por la señora Malbert Calendario sobre el proceso de cesantías le hubiera inyectado una lentitud no deseada por el legislador porque no se hubiese podido determinar con certeza a quiénes se iba a cesantear. Apéndice, pág. 110.

Ante este cuadro fáctico, la señora Malbert Candelario presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. En él, señaló que el foro primario erró al no resolver que la fecha de corte que estableció la Carta Circular 2009-16 contravenía las disposiciones de la Ley Núm. 7, supra, relativas a la antigüedad y al no concluir que ella estaba exenta de ser cesanteada porque al momento de su despido, su antigüedad era de 14 años, 1 mes y 27 días. El Estado, por su parte, argumentó que la actuación de la JREF de decretar una fecha de corte de antigüedad al implementar el plan de cesantías era un ejercicio válido de delegación de poderes.

El 28 de febrero de 2011 una mayoría del mismo panel del Tribunal de Apelaciones dictó sentencia mediante la cual revocó el dictamen del foro primario que había confirmado el laudo de arbitraje que decretó la validez de la cesantía de la señora Malbert Candelario. El foro apelativo intermedio acogió la contención de la señora Malbert Candelario y resolvió que la fecha de corte decretada por la JREF creó una ficción que era arbitraria y contraria al principio de antigüedad en el servicio público. Además, indicó que la actuación de establecer una fecha de corte para computar la antigüedad de los empleados públicos no se encontraba justificada expresamente en la Ley Núm. 7, supra, ni emanaba de la facultad delegada por el legislador a la JREF. El Juez Figueroa Cabán disintió nuevamente de la determinación tomada por la mayoría del Panel y se reafirmó en su voto disidente emitido en el caso Milagros Sánchez Collazo v. Departamento de la Vivienda, KLRA-2010-585.

Por estar en desacuerdo con la decisión del Tribunal de Apelaciones, el Estado presentó un recurso de certiorari ante este Foro. Nos solicita que revoquemos la sentencia que emitió el Tribunal de Apelaciones. Sostiene que el legislador sí delegó a la JREF la facultad de establecer una fecha de corte para computar la antigüedad de los empleados públicos. El 6 de abril de 2011 emitimos una Resolución en auxilio de nuestra jurisdicción en la que paralizamos los efectos de la sentencia del Tribunal de

Apelaciones y ordenamos a la señora Malbert Candelario que en 30 días mostrara causa por la cual no se debía expedir el auto de *certiorari*, y revocar la sentencia del Tribunal de Apelaciones. Además, consolidamos el recurso CC-2011-260 con el recurso CC-2010-1005 por tratarse de la misma controversia.

**CC-2011-548**

El 14 de abril de 2009 el Sr. Luis Villegas León recibió una certificación de antigüedad en la que se le informó que tenía 13 años y 7 meses de servicio. En la comunicación se le apercibió que tenía derecho a impugnar la antigüedad certificada ante la oficina de recursos humanos de la agencia dentro de un plazo de 30 días a partir de su notificación. El 26 de junio de 2009 el Departamento de la Vivienda le notificó otra certificación de antigüedad. Se le indicó esta vez que su antigüedad al 17 de abril de 2009 era de 13 años, 5 meses y 14 días. De igual forma, se le volvió a explicar su derecho a refutar la antigüedad certificada. En ninguna de las dos ocasiones el señor Villegas León ejerció su derecho a impugnar la antigüedad que se le certificó.

Así las cosas, el 25 de septiembre de 2009 el Departamento de la Vivienda le anunció al señor Villegas León que efectivo el 6 de noviembre de 2009, quedaría cesanteado de su empleo.

El 7 de octubre de 2009 el señor Villegas León presentó por derecho propio una apelación ante CASARH.

Señaló que la fecha de efectividad de las cesantías para sus compañeros de trabajo era el 8 de enero de 2010 y no el 6 de noviembre de 2009, como se le comunicó a él. Solicitó la corrección de su situación para que la efectividad de su cesantía fuese el mismo día que la de sus compañeros. El 23 de febrero de 2010 el Departamento de la Vivienda contestó la apelación y solicitó su desestimación.

El 9 de marzo de 2010 el señor Villegas León, por conducto de su representación legal, presentó una apelación enmendada. Adujo violaciones del principio de antigüedad y del debido proceso de ley. Además, expuso que estaba exento de la aplicabilidad de la Ley Núm. 7, supra.

Luego de varios trámites, el 22 de julio de 2010 la CASARH emitió una resolución. En ella expresó que el señor Villegas León no contaba con el mínimo de antigüedad requerido para estar exento de la aplicabilidad de las cesantías decretadas por la Ley Núm. 7, supra. Asimismo, indicó que el señor Villegas León no impugnó dentro del término correspondiente la antigüedad certificada, por lo que quedaba vigente su cesantía. El señor Villegas León solicitó la reconsideración de la determinación de la CASARH. No obstante, esta se negó a reconsiderar su dictamen.

El 13 de octubre de 2010 el señor Villegas León presentó un recurso de revisión judicial ante el Tribunal de Apelaciones. Argumentó que la CASARH incidió al avalar la determinación de la agencia de cesantearlo de su puesto.

Cimentó su contención en que se debió tomar en cuenta para el cómputo de antigüedad una certificación adicional que presentó junto a un desglose del seguro social. En ellos, alegadamente se demostraba que la antigüedad del señor Villegas León es de más de 16 años por lo que quedaría exento del plan de cesantías. Luego de evaluar el recurso, una mayoría de jueces del mismo panel del foro apelativo intermedio revocó el dictamen de CASARH. En específico, resolvió que correspondía computar la antigüedad del señor Villegas León hasta el último día de trabajo y no hasta el 17 de abril de 2009, según estableció la Carta Circular 2009-16. Al resolver así, el tribunal concluyó que "[c]ualquier otro cómputo es contrario a la ley y ajeno al criterio de antigüedad, tal como éste se ha concebido". Apéndice, pág. 269. Una vez más, el Juez Figueroa Cabán disintió de la determinación tomada por la mayoría del Panel y se reafirmó en su voto disidente emitido en el caso Milagros Sánchez Collazo v. Departamento de la Vivienda, KLRA-2010-585.

Por discrepar del criterio del Tribunal de Apelaciones, el Estado presentó un recurso de *certiorari*. Aduce, al igual que en los recursos anteriores, que el Tribunal de Apelaciones erró al concluir que la actuación de la JREF de establecer una fecha de corte para el cómputo de antigüedad en el servicio público es totalmente impermisible, inoficiosa y contraria a la Ley Núm. 7, supra. El 7 de julio de 2011 emitimos una Resolución en

auxilio de nuestra jurisdicción en la que paralizamos los efectos de la sentencia del Tribunal de Apelaciones y ordenamos al señor Villegas León que en 30 días mostrara causa por la cual no se debía expedir el auto de *certiorari* y revocar la sentencia del Tribunal de Apelaciones. Además, consolidamos el recurso CC-2011-548 con los recursos CC-2011-260 y CC-2010-1005 por tratarse de la misma controversia.

**CC-2011-698**

El 1 de abril de 2009 el Departamento de Transportación y Obras Públicas (D.T.O.P.) notificó al Sr. Pablo Barreto Pérez que su antigüedad total en el servicio público era de ocho años y 20 días. Posteriormente, el 24 de abril de 2009, el señor Barreto Pérez impugnó ante el D.T.O.P. la antigüedad certificada y planteó que en realidad comenzó a laborar en esa agencia desde el año 1987.

El 8 de mayo de 2009 el D.T.O.P. le envió una comunicación al señor Barreto Pérez. En ella le indicó que a la fecha del 31 de marzo de 2009, la suma de todos los períodos trabajados por él en el servicio público totalizaba 13 años y 127 días. Consecuentemente, al 17 de abril de 2009 la antigüedad del señor Pérez Barreto en el servicio público era de 13 años y 144 días. El 25 de septiembre de 2009 el DTOP le notificó al señor Barreto Pérez que, efectivo el 6 de noviembre de 2009, sería

cesanteado de su puesto de conformidad con la Ley Núm. 7, supra.

Insatisfecho con la determinación del D.T.O.P., el 7 de octubre de 2009 el señor Barreto Pérez presentó por derecho propio una apelación ante la CASARH. Allí adujo que al momento de ser efectiva su cesantía ya contaba con 14 años en el servicio público. Apéndice, pág. 37.

Luego de varios incidentes procesales, mediante resolución emitida el 11 de junio de 2010 la CASARH declaró no ha lugar la apelación que presentó el señor Barreto Pérez. Al resolver así, concluyó que este no cumplió con el requisito mínimo de antigüedad que estableció la JREF en la Carta Circular 2009-16 para quedar exento de las cesantías. Por consiguiente, la CASARH dejó en vigor la determinación y carta de cesantía cursada al señor Barreto Pérez el 25 de septiembre de 2009.

En desacuerdo, el señor Barreto solicitó reconsideración ante la CASARH. Argumentó que para hacer la determinación de antigüedad en el servicio público, la CASARH tenía que considerar el tiempo trabajado hasta la fecha de efectividad de la cesantía, es decir, hasta el último día de trabajo. Finalmente, planteó que la antigüedad debía computarse desde que comenzó a trabajar en el servicio público hasta el día en que cesaría en sus funciones, es decir, hasta el 6 de noviembre de 2009. Añadió que la CASARH aplicó erróneamente el concepto de antigüedad en el servicio público al calcular los años de

servicios hasta el 17 de abril de 2009 y no hasta la fecha en fue efectiva su cesantía.

Mediante resolución de 21 de julio de 2010, la CASARH denegó la solicitud de reconsideración presentada por el señor Barreto. Inconforme, este presentó un recurso de revisión administrativa ante el Tribunal de Apelaciones. En él adujo en esencia que la JREF no tenía autoridad ni fuerza legal para establecer un límite de tiempo en cuanto a las personas a ser cesanteadas, por lo que a su entender, su cesantía era nula.

El 12 de julio de 2011 una mayoría de jueces del mismo panel del Tribunal de Apelaciones emitió sentencia mediante la cual revocó el dictamen de CASARH. El tribunal fundamentó su proceder en que la fecha de corte de 17 de abril de 2009, según establecida por la JREF, no surgía expresamente de la Ley Núm. 7, supra, ni de la facultad delegada por el legislador a ese ente administrativo. Por cuarta vez, el Juez Figueroa Cabán disintió y se reafirmó en su voto disidente expuesto en en el caso Milagros Sánchez Collazo v. Departamento de la Vivienda, KLRA-2010-585.

El 15 de agosto de 2011 el Estado presentó un recurso de *certiorari*. En síntesis, solicita la revocación de la sentencia emitida por el Tribunal de Apelaciones. Alega, al igual que los recursos anteriores, que el Tribunal de Apelaciones erró al concluir que la actuación de la JREF de establecer una fecha de corte para el cómputo de antigüedad

en el servicio público es totalmente improcedente y contradictoria a la Ley Núm. 7, supra. El 16 de agosto de 2011 emitimos una Resolución en auxilio de nuestra jurisdicción en la que ordenamos al señor Barreto Pérez que en 30 días mostrara causa por la cual no se debía expedir el auto de *certiorari*, y revocar la sentencia emitida por el Tribunal de Apelaciones. Además, consolidamos el recurso CC-2011-698 con los recursos CC-2011-548, CC-2011-260 y CC-2010-1005, por tratarse de la misma controversia.

## II

### A

El 9 de marzo de 2009 se aprobó la Ley Núm. 7-2009, supra. En ella se estableció un plan de emergencia de reducción de gastos por parte del Gobierno de Puerto Rico. Además, mediante el Art. 37, 3 L.P.R.A. secs. 8796-8801, se estableció una segunda fase del plan de reducción de gastos, que conllevó cesantías involuntarias para la eliminación de puestos que serían aplicables a todas las agencias de la Rama Ejecutiva del Gobierno de Puerto Rico, sujeto a ciertas excepciones.

El procedimiento para efectuar cesantías se recogió en el Art. 37.04 de la Ley Núm. 7, supra, 3 L.P.R.A. sec. 8799, que establece en parte:

**Sec. 8799 Procedimiento.**

El procedimiento para llevar a cabo la Fase II será el dispuesto en esta sección.

**(a)...**

**(b) Cesantías**

(1) En vista del estado de emergencia fiscal, la escasez de recursos fiscales, la gravedad de los problemas que enfrentamos y la urgencia requerida para corregir los problemas fiscales, se exime de agotar medidas tales como reubicación de personal, readiestramiento de empleados, disfrute de vacaciones acumuladas, disfrute de licencia sin sueldo, reducción de jornada de trabajo o descensos, previo a instrumentar las cesantías.

(2) Las agencias notificarán la terminación a todo empleado que a la fecha de la vigencia de esta ley tenga un nombramiento transitorio o irregular, por lo que no será necesario observar, en cuanto a éstos, el criterio de antigüedad. La notificación escrita que a esos efectos las agencias envíen, le apercibirá al empleado de su derecho de solicitar revisión de la decisión de la agencia, ante la CASARH, en conformidad a lo dispuesto por la sec. 1468m de este título, y su reglamento. La notificación se hará mediante entrega a la mano o por correo certificado con acuse de recibo a la dirección que obra en los expedientes de la agencia.

(3) Las cesantías de los empleados con nombramiento permanente o de carrera se efectuarán observando exclusivamente el criterio de antigüedad, de modo que sean cesanteados en primer término aquellos que tengan menor antigüedad.

(4) A los fines de determinar la antigüedad de empleados afectados se considerarán todos los servicios prestados por los empleados afectados en el servicio público, independientemente de las disposiciones de los convenios colectivos, reglamentos, cartas circulares y otros documentos normativos.

Como se aprecia, la Asamblea Legislativa estableció en el primer inciso las razones de política pública que la llevaron a establecer un plan de cesantías de empleados públicos. De igual forma, los incisos dos al cuatro hacen una distinción entre los empleados con nombramientos irregulares y los empleados con

nombramientos permanentes. En cuanto a estos últimos, se estableció que el criterio rector a utilizarse sería la antigüedad, sin tomar en cuenta las disposiciones anteriores contenidas en convenios colectivos, reglamentos, cartas circuladas y documentos normativos que pudieran estar en conflicto. Es decir, el legislador quiso establecer un mecanismo uniforme para computar la antigüedad de manera que fuese, en lo posible, una decisión objetiva.

Asimismo, el Art. 37.04, supra señala:

(5) Se crea la JREF, la cual estará compuesta por el Presidente del BGF, el cual dirigirá la Junta, el Secretario del Trabajo, el Secretario del Departamento de Desarrollo Económico y Comercio de Puerto Rico, el Secretario del Departamento de Hacienda, y la Directora Ejecutiva de la OGP. Sus miembros, en el desempeño de esta encomienda, no habrán de recibir remuneración adicional a la que reciben por el desempeño de sus labores en sus agencias o departamentos.

(6) Además de las facultades otorgadas por este capítulo, la JREF tendrá todas las facultades necesarias y convenientes para descargar la encomienda aquí asignada, incluyendo pero sin limitarse a la de realizar o encomendar, a las agencias o departamentos que están a su cargo, que se realicen los estudios que sean necesarios; requerir a las agencias la información necesaria para realizar su encomienda; asesorar al Gobernador y a las agencias en todo lo relativo a los empleados a ser cesanteados; evaluar, aprobar o rechazar peticiones de empleados para reducir la jornada de los puestos que ocupan; llevar a cabo reuniones entre sí y con los jefes de las agencias; y reclutar de forma temporal, mediante destaque, el personal necesario para realizar la encomienda. Su Presidente tendrá la facultad, además, para asignar y/o poner a la disposición de la JREF todo recurso del BGF que sea necesario para descargar sus obligaciones

bajo este capítulo. La encomienda de la JREF, y su duración finalizará una vez se cumpla el objetivo de la ley.

(7) La JREF habrá de determinar la cantidad global de empleados a ser cesanteados, en conformidad con las disposiciones del Artículo 2 de esta Ley y en armonía con la necesidad de asegurar la continuidad y calidad de los servicios gubernamentales.

(8) Las agencias identificarán y certificarán a la JREF la antigüedad de cada uno de sus empleados, dentro de un término no mayor de quince (15) días calendario de iniciada la Fase II.

En el mismo término, las agencias certificarán por escrito a sus empleados afectados, individualmente, su fecha de antigüedad según surge de sus récords. En el caso de empleados miembros de una unidad apropiada representada por una organización sindical se notificará, además, a dicha organización sindical. Dicha certificación se notificará a los empleados, y, además, de ser el caso, a la organización sindical, mediante entrega a la mano o por correo certificado con acuse de recibo, a la dirección que obra en los expedientes de las agencias y apercibiéndole del derecho que tiene el empleado a exponer y fundamentar por escrito su versión en cuanto a su fecha de antigüedad. La fecha de notificación será la de su entrega o envío.

El inciso quinto de este artículo creó la JREF y delimitó quiénes son los funcionarios que la componen. Además, se desprende del sexto inciso que la JREF recibió una delegación amplia de poderes de parte de la Asamblea Legislativa para poder instrumentalizar la Fase II de la Ley Núm. 7, supra, que incluyó el proceso de cesantías.

Por otra parte, un análisis del séptimo inciso refleja una preocupación por parte del legislador de que

no se afectara la continuidad y calidad de los servicios gubernamentales en la implementación de la Ley Núm. 7, supra. Además, el inciso octavo muestra que la Asamblea Legislativa ordenó a las agencias que certificaran la antigüedad de sus empleados para brindarle uniformidad al proceso de cesantías.

Finalmente, el Art. 37.02, supra, dispone:

(9) El empleado, y de ser el caso, éste a través de su organización sindical, tendrá un término no mayor de treinta (30) días calendario, a partir de la fecha de la notificación, para presentar por escrito a la agencia, evidencia documental oficial emitida por la autoridad o entidad gubernamental competente (evidencia documental fehaciente) que refute la antigüedad que le ha sido certificada. Para ello utilizará el formulario que para esos fines será provisto por su respectiva agencia, el cual completará y someterá a su propia agencia, con copia de la evidencia documental fehaciente que refute la fecha de antigüedad notificada por la agencia.

(10) En la eventualidad de que el empleado afectado no refute o no presente, dentro del término aquí dispuesto, evidencia documental fehaciente que sostenga su posición, la antigüedad a ser utilizada será aquella que le fue notificada por la agencia. Dicha antigüedad será concluyente para todo propósito relacionado con este capítulo.

(11) En la eventualidad de que el empleado afectado presente, dentro del término aquí dispuesto, evidencia documental fehaciente que controvierta la antigüedad que le ha sido notificada, la agencia no tomará determinación final sobre la antigüedad sin antes darle la oportunidad de tener una vista previa.

(12) La agencia notificará al empleado su determinación final que sobre la antigüedad tome, y, además, de ser el caso, a la organización sindical, en un término no mayor de treinta (30) días calendario a partir de la fecha en que concluya la vista informal a la

cual se refiere la cláusula (11) de este inciso, apercibiéndole de su derecho de solicitar revisión de dicha determinación, conforme a lo dispuesto a esos fines en las cláusulas (13) y (14) de este inciso. Dicha notificación se hará a los empleados y, además, de ser el caso, a la organización sindical, mediante entrega a la mano o por correo certificado con acuse de recibo, a la dirección que obra en los expedientes de las agencias. La fecha de notificación será la de su entrega o envío. No obstante, la presentación del recurso de revisión no habrá de paralizar las cesantías; Disponiéndose, no obstante, que en el caso que el empleado prevalezca, se le restituirá a su puesto, efectivo a la fecha de su cesantía.

(13) El empleado afectado podrá solicitar revisión de la determinación final tomada por la agencia, solamente en cuanto a su antigüedad ante la CASARH, en conformidad a lo dispuesto por la sec. 1468m de este título, y su reglamento.

(14) Aquellos empleados que sean miembros de una unidad apropiada, afiliados o no a una organización sindical, podrán revisar la determinación tomada final por la agencia, solamente en cuanto a su antigüedad, mediante una petición que a esos efectos presenten a los árbitros de la Comisión, creada al amparo de las secs. 1451 et seq. de este título, en un término no mayor de treinta (30) días calendario del recibo de la notificación de la agencia.

(15) La agencia notificará las cesantías con al menos treinta (30) días calendario de anticipación a la fecha de su efectividad, mediante comunicación escrita dirigida al empleado y, además, de ser el caso, a la organización sindical, indicando la fecha de efectividad de la misma. La notificación se realizará conforme a la cláusula (12) de este inciso.

(16) Las cesantías a efectuarse conforme a esta Fase II serán llevadas a cabo de forma escalonada, a partir del 1 de julio del 2009 y durante todo el año fiscal 2009-2010. La JREF establecerá el orden en que se llevarán a cabo las cesantías y al determinar este orden tomará

> en cuenta las medidas necesarias para asegurar que las agencias afectadas puedan continuar operando apropiadamente luego de las cesantías.
>
> ........

Los acápites nueve al quince describen a grandes rasgos el proceso de certificación de antigüedad de los empleados públicos. Asimismo, disponen del proceso de impugnación de antigüedad en caso de que el empleado no estuviere de acuerdo con ella. Resalta de estos incisos que si el empleado no refuta la antigüedad certificada, esta será concluyente para todo propósito relacionado con este capítulo, lo que incluye el proceso de cesantías. En otras palabras, el legislador le ordenó a la JREF que utilizara la antigüedad certificada para encaminar el plan de cesantías.

De igual manera, el undécimo inciso le permitió al empleado que no estuviese de acuerdo con la antigüedad certificada que presentara una revisión de esa decisión, que incluía el derecho a una vista previa. De otra parte, el inciso duodécimo le impuso a las agencias el deber de notificar en un término no mayor de 30 días la determinación final sobre la antigüedad, en caso de que fuera impugnada. Sin embargo, se dejó claro que la revisión de la certificación de antigüedad no paralizaría la cesantía. El inciso decimotercero le confirió a la CASARH la facultad de recibir apelaciones referentes exclusivamente al cálculo de antigüedad.

El inciso decimoquinto obligó a las agencias a que notificaran al empleado, con 30 días de anticipación, la decisión de cesantearlo de su empleo. Por su parte, el inciso decimosexto reglamentó lo relativo al tiempo en que se efectuarían los despidos. En específico, se señaló el año fiscal 2009-2010 para implementar el plan de cesantías.

El 2 de noviembre de 2009, la JREF emitió la Carta Circular Núm. 2009-16. Esta versó sobre el proceso para la determinación de los empleados públicos a ser afectados por el Plan de Cesantías dispuesto en el Capítulo II de la Ley Núm. 7, supra. Además, explicaba que de conformidad con los Arts. 37.04(b)(3) y (4) se notificarían las determinaciones en torno al corte de antigüedad para determinar cuáles empleados serían afectados por el plan de cesantías. La JREF comenzó por establecer que la Ley Núm. 7, supra, le otorgó todas las facultades necesarias y convenientes para hacer cumplir los objetivos de las medidas de reducción de gastos del Capítulo III de la ley. A renglón seguido, añadió:

> (1) Para asegurar que el cómputo de la antigüedad se realizara de manera uniforme para todos los empleados públicos, la JREF estableció una fecha de corte de antigüedad del 17 de abril de 2009. Es decir, la antigüedad para todos los empleados públicos se determinó usando los años en el servicio público acumulados hasta dicha fecha.

> (2) En la primera ronda de cesantías, efectiva el 10 de julio de 2009, fueron afectados los empleados públicos que a la fecha de corte de 17 de abril de 2009 contaban con una

> antigüedad en el servicio público igual o menor a nueve (9) meses y diecisiete (17) días contados.
>
> (3) En la segunda ronda de cesantías, efectiva el 6 de noviembre de 2009 o la fecha posterior que le sea notificada al empleado, según haya sido autorizado por la JREF, fueron afectados empleados públicos que a la fecha de corte de 17 de abril de 2009 contaban con una antigüedad en el servicio público igual o menor a trece (13) años, seis (6) meses y cero (0) días.

En otras palabras, la JREF, en aras de brindar uniformidad al proceso y evitar cualquier señalamiento de discrimen por ideas políticas u otros, estableció una fecha objetiva y uniforme de cómputo de antigüedad.

En Domínguez Castro *et al.* v. E.L.A. I, 178 D.P.R. 1 (2010), certiorari denegado, Domínguez Castro v. Puerto Rico, 131 S.Ct. 152, 562 U.S. __ (2010), este Tribunal declaró la constitucionalidad del proceso de cesantías establecido en la Ley Núm. 7, supra. Así, no encontramos violación de la cláusula constitucional del debido proceso de ley en su vertiente sustantiva. En particular, aplicamos a la Ley Núm. 7 un escrutinio racional y concluimos que se encontraba presente un interés legítimo de parte del Estado y la medida adelantaba ese fin. Íd., págs. 61-62.

En lo referente a la vertiente procesal del debido proceso de ley, concluimos que "el procedimiento establecido por el Capítulo III de la Ley Núm. 7 es uno que sobrepasa el mínimo requerido por la normativa jurisprudencial". Íd., pág. 65. Fundamentamos esa

posición en que la legislación en controversia disponía de un organismo competente e imparcial que podía atender los reclamos y aquilatar la evidencia que los empleados pudieran presentar, en caso de que decidieran recurrir finalmente de la decisión de la agencia. Íd.

Finalmente, determinamos que hubo una debida delegación de poder a la Rama Ejecutiva por lo que no se violó el principio axiomático de separación de poderes. Íd., págs. 97-99. Cimentamos esa conclusión en que la legislación en controversia establecía claramente las facultades que se le delegaban a la Rama Ejecutiva y estas venían acompañadas de unas guías específicas. Íd.

Más tarde, en Negrón Matos et al. v. E.L.A., 179 D.P.R. 217 (2010), tuvimos la oportunidad de auscultar si ciertos empleados públicos estaban exentos del plan de cesantías por razón del puesto que ocupaban. Luego de hacer un ejercicio de hermenéutica, concluimos que varios empleados de la Administración de Instituciones Juveniles (AIJ) no estaban exentos del plan de cesantías dispuesto en la Ley Núm. 7, supra. Fundamentamos nuestro proceder en que el texto de la Ley Núm. 7 era claro al establecer que "sólo los oficiales juveniles que labora[ban] en la AIJ est[aban] excluidos expresamente" del plan de cesantías. Íd., pág. 230.

Mientras tanto, en Báez Rodríguez et al. v. E.L.A., 179 D.P.R. 231 (2010), resolvimos que los coordinadores

de pruebas de detección de sustancias controladas y otras pruebas especiales del Instituto de Ciencias Forenses sí estaban exentos del plan de cesantías. Alcanzamos esa decisión al colegir que los "empleados realiza[ban] labores técnicas y de peritaje para el Instituto de Ciencias Forenses", por lo que estaban exentos según el Art. 37.02 de la Ley Núm. 7, 3 L.P.R.A. sec. 8797.

Posteriormente resolvimos Bomberos Unidos v. Cuerpo Bomberos et al., 180 D.P.R. 723, (2011). Allí, reafirmamos los pronunciamientos que emitimos en Domínguez Castro. Íd., págs. 13 a 19. De igual manera, ampliamos el alcance de lo resuelto en Domínguez Castro sobre la Ley Núm. 7, supra. Así, al contrastar la Ley Núm. 7 con la Sección 17 del Artículo III de la Constitución de Puerto Rico, indicamos que el título de la primera era lo suficientemente descriptivo con relación al asunto que regulaba y la forma en que había de regularlo. Íd., pág. 766. Añadimos que una mera lectura de la Ley Núm. 7 revelaba que existía una relación directa entre el título del referido estatuto, el asunto que regulaba y los métodos escogidos para regularlo. Íd.

Además, resolvimos que no era necesario que las cartas de cesantías fuesen notificadas simultáneamente a todos los empleados afectados. Al concluir así, razonamos que no se intuía que la intención del legislador fuera

esa, por lo que debíamos abstenernos "de incorporar al Art. 37.04 (b), requisitos de notificación adicionales". Íd., pág. 769. De igual forma, nos negamos a concluir que la consecuencia de la notificación defectuosa de una carta de cesantía fuese la nulidad de esta última. Por el contrario, razonamos que la cesantía era válida, pero la parte perjudicada podía ejercer su derecho a revisar la decisión administrativa ante el foro pertinente, sin sujeción a los términos que establecía la ley mientras no incurriera en incuria. Íd., pág. 771.

Finalmente, colegimos que el hecho de que ciertas cartas de cesantías fueran firmadas por un funcionario público interino no era óbice para concluir que las correspondientes cesantías eran nulas. En otras palabras, razonamos que el funcionario público interino que firmó las cartas de cesantías tenía plena capacidad jurídica para hacerlo. Íd., pág. 773.

Más adelante, este Tribunal tuvo la oportunidad de resolver Sánchez Díaz et al. v. E.L.A., Op. de 4 de mayo de 2011, 2011 T.S.P.R. 68, 2011 J.T.S. 73, 181 D.P.R.__ (2011). En ese caso, teníamos que resolver si ciertos empleados estaban exentos del plan de cesantías contemplado en la Ley Núm.7, supra. Luego de un análisis minucioso de la letra de la Ley Núm. 7, supra, y de su historial legislativo, dictaminamos que los empleados del Registro de la Propiedad estaban exentos del plan de

cesantías. Íd., pág. 29.

B

Desde 1928 el Tribunal Supremo de los Estados Unidos estableció claramente que para que exista una delegación constitucional de poderes a las agencias administrativas es necesario que el poder legislativo establezca un principio inteligible. J.W Hampton, Jr., & Co v. United States, 276 U.S. 394, 409 (1928). De igual forma, dicho Foro señaló en Loving v. United States, 517 U.S. 748, 778 (1996) que el principio inteligible implica "que el Congreso no debe delegar el poder de hacer leyes, y por lo tanto, no debe delegar más autoridad que la necesaria para implementarlas". (Traducción nuestra.) En virtud de este principio inteligible, las agencias administrativas canalizan la autoridad y discreción que la ley les confiere. Véase, P.L. Strauss, The Place of Agencies in Goverment: Separation of Powers and the Fourth Branch, 84 Colum L. Rev. 573 (1984).

En la jurisprudencia del Tribunal Supremo federal han sido pocas las ocasiones en que la delegación de poderes a las agencias administrativas ha fracasado. Esa situación ocurrió en Panama Refining Oil Co. v. Ryan, 293 U.S. 388 (1935) y en A.L.A. Schechter Poultry Corporation v. United States, 295 U.S. 498 (1935). Sin embargo, es preciso señalar que estos casos se suscitaron durante la época de la implantación de la política del Nuevo Trato

por parte de la administración del presidente Franklin Delano Roosevelt. D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2ª ed., Editorial Forum, pág. 37. Así pues, el contexto histórico de estos dos casos fue sumamente excepcional. Posteriormente, la trayectoria jurisprudencial del máximo foro federal demuestra que la balanza se ha inclinado a permitir la delegación de poderes siempre que exista un principio inteligible que guíe la discreción administrativa. Véanse, Whitman v. American Trucking Assns., 531 U.S. 457 (2001); Loving v. United States, supra; Touby v. United States, 500 U.S. 160 (1991); Skinner v. Mid-America Pipeline Co., 490 U.S. 212 (1989); Mistretta v. United States, 488 U.S. 361 (1989); R.J. Pierce Jr., Administrative Law Treatise, 5ta ed., Aspens Publishers, 2010, Tomo I, págs. 108-109.

Somos conscientes de que en los últimos años se ha desarrollado un debate interesante sobre las bondades y defectos de la doctrina de la delegación de poderes. Por un lado, existen académicos que abogan por la extinción de la doctrina porque entienden que esta no tiene fundamento alguno en el texto constitucional estadounidense. E. Posner y A. Vermeule, Interring the Nondelegation Doctrine, 69 U. Chi L. Rev. 1721 (2002). Por otro lado, existen expertos en la materia que piensan que la doctrina tiene un fundamento constitucional

sólido, aunque no están de acuerdo con la formulación del principio de inteligibilidad. G. Lawson, Discretion as Delegation: The "Proper" Understanding of the Non Delegation Doctrine, 73 George Wash. L. Rev 235, 236 (2005). Véanse, además, J. Mashaw, Why Administrators Should Make Political Decisions, 1 J.L. Econ. & Org. 81 (1985); C. Buys y W. Isasi, An "Authoritative" Statement of Administrative Action: A Useful Political Invention or a Violation of the Separation of Powers Doctrine?, 7 N.Y. U. Journal of Legislation and Public Policy 73 (2003).

Más allá del debate académico, la realidad demuestra que la función de las agencias "se ha transformado de una entidad pasiva que rendía ciertos servicios a una muy activa que realiza multiplicidad de actividades. M. & B. S., Inc. v. Depto. de Agricultura, 118 D.P.R. 319, 325 (1987). Por esa razón, desde la década de los cuarenta del siglo pasado nos hemos expresado a favor de la delegación de poderes. Luce & Co., v. Junta Salario Mínimo, 62 D.P.R. 452, 464 (1943).

Posteriormente, este Tribunal tuvo la oportunidad de analizar el tema de la delegación de poderes en Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670 (1953). Allí, luego de reafirmar el precedente de Luce & Co., v. Junta Salario Mínimo, supra, indicamos que

> el mundo moderno se caracteriza por la gran complejidad en las relaciones sociales y económicas de las personas, conjuntamente con la progresiva supervisión gubernativa sobre la conducta individual, y ello implica que la

> legislatura está imposibilitada de anticipar legislativamente, en forma detallada, minuciosa o específica, la multiplicidad de situaciones que puedan surgir de esas relaciones complejas, siendo suficiente el que la ley en cuestión señale o establezca normas amplias y generales que sirvan de guía o dirección a entidades administrativas expertas, para que éstas, con su experiencia y conocimientos especiales, apliquen esas normas concretamente a los hechos que puedan surgir y ultimen los detalles que implementen la política general legislativa. Tales normas no necesitan expresarse con precisión o exactitud matemática y pueden ser tan generales que justifiquen más de una conclusión y, a menos que la norma no se exprese o sea tan sumamente vaga que como cuestión de hecho no exista, la presunción de constitucionalidad que conlleva toda ley basta para sostener su validez.

Íd., págs. 692-693. (Citas omitidas.) Véase, además, D. Fernández Quiñones, op cit., págs. 48-49.

Subsiguientemente, este Foro se expresó acerca de la delegación de poderes en López v. Junta Planificación, 80 D.P.R. 646 (1958). Por su importancia, conviene repetir las palabras que mencionamos entonces sobre la doctrina de la delegación de poderes:

> Sin duda, la Legislatura no puede delegar poderes arbitrarios e ilimitados a los organismos administrativos. La ley debe contener siempre normas adecuadas que sirvan de guía y que limiten el uso del poder delegado, ya sea éste el de promulgar reglamentos con fuerza de ley (*rule-making*) o el de resolver controversias específicas a la luz de hechos concretos (*adjudication*). Pero no es indispensable que la ley fije normas detalladas y minuciosas. Dadas las condiciones sociales y económicas modernas, (1) la Legislatura no puede considerar los detalles de los programas de gobierno: su función esencial es la de establecer pautas generales y si tratase de intervenir en los detalles no podría desempeñarla a cabalidad; (2) con frecuencia es preciso desarrollar programas que exigen la

> supervisión constante, el conocimiento técnico
> y la experiencia especializada de organismos
> administrativos; y (3) siempre resulta esencial
> para la realización efectiva de esos programas
> conceder un amplio margen de discreción a
> dichos organismos. Por eso, **la delegación de
> poderes puede hacerse constitucionalmente a
> base de normas amplias y generales**.

Íd., pág. 661. (Citas omitidas y énfasis nuestro.)

En otras palabras, por motivo de la complejidad del mandato otorgado a las agencias administrativas, "ha sido necesario que la Rama Legislativa les delegue una gran discreción en el desarrollo y ejecución de la política pública". M. & B. S., Inc. v. Depto. de Agricultura, supra, pág. 326.

De esta forma, al igual que el Tribunal Supremo federal, hemos permitido la delegación de poderes a las agencias administrativas, siempre que se establezcan normas adecuadas o un principio inteligible que encauce las determinaciones de las agencias administrativas. Domínguez Castro et al. v. E.L.A. I, supra; Perfect Cleaning v. Cardiovascular, 162 D.P.R. 745 (2004); González v. E.L.A., 167 D.P.R. 400, 410 (2006); Gutierrez v. A.A.A., 167 D.P.R. 130, 143 (2006); Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105 (2002); Rodríguez v. Bco. Gub. De Fom. P.R., 151 D.P.R. 383, 400 (2000); Viajes Gallardo v. Clavell, 131 D.P.R. 275 (1992); M. & B. S., Inc. v. Depto. de Agricultura, supra.

Claro está, la determinación de si la legislación en cuestión contiene un principio inteligible o normas

adecuadas va a depender de un análisis caso a caso en el que se ausculte la delegación conferida y los criterios establecidos por el legislador. Whitman v. American Trucking Assns., supra; D. Summerville, The Nondelegation Doctrine after Whitman v. American Trucking Associations: Constitutional Precedent Breathes a Sigh of Relief, 18 Ga. St. U. L. Rev. 627, 664 n. 234 (2001).

III

En el caso que nos ocupa, el Tribunal de Apelaciones decidió en cuatro ocasiones diferentes que a la JREF no se le delegó el poder de establecer una fecha de corte para computar la antigüedad de los empleados públicos. No obstante, un análisis integrado del texto de la Ley Núm. 7, además de nuestra jurisprudencia en materia de delegación de poderes, nos convence de que el foro apelativo intermedio erró al resolver así.

En primera instancia, del Art. 37.04(b)(6), supra, surge una delegación expresa a la JREF para tomar todas las acciones convenientes y necesarias para el cumplimiento del plan de cesantías. Es decir, a la JREF se le delegó estatutariamente la facultad de administrar el plan de cesantías mediante la identificación de aquellos empleados que iban a ser afectados. Véase, Art. 37.04(b)(5),(6),(7) y (8), supra. De igual forma, a la JREF se le delegó la obligación de determinar el orden en que se llevarían a cabo las cesantías. Véase, Art.

37.04(b)(16), <u>supra</u>.

Como se mencionó anteriormente, este Tribunal ha interpretado y declarado la constitucionalidad de la Ley Núm. 7 en varias ocasiones. En este caso, fue al amparo de ese mandato legislativo que la JREF emitió la Carta Circular Núm. 2009-16 mediante la cual estableció una fecha de corte para computar la antigüedad de los empleados públicos.

Nos resulta espinoso concebir un procedimiento distinto al implementado por la JREF para llevar a cabo las cesantías. La realidad demostró que al establecer un cómputo uniforme de antigüedad, se evitó cualquier aplicación arbitraria del plan de cesantías. Es decir, la fecha uniforme de cómputo de antigüedad le brindó al proceso de cesantías un clima de pureza y transparencia. Así las cosas, los empleados públicos podían contar con la certeza de que lo único que se iba a tomar en cuenta para determinar quién era cesanteado era la antigüedad en la misma fecha sin distinciones artificiales que variaran de agencia en agencia o de empleado a empleado. Precisamente, en lo que se refiere a la delegación de la autoridad para implementar el plan de cesantías, el criterio de la antigüedad es el principio inteligible que estableció la Asamblea Legislativa para guiar la acción de la JREF. Como mencionamos en <u>Domínguez Castro</u>, <u>supra</u>, págs. 94-95, la JREF "tendrá todas las facultades

necesarias y convenientes encaminadas al cumplimiento de la Ley Núm. 7, supra, pero en materia de cesantías, siempre estará obligada a respetar el criterio de antigüedad".

De igual manera, y debido a la importancia del criterio de antigüedad, la Ley Núm. 7, supra, le permitió a todos los empleados impugnar la certificación de antigüedad que emitía la agencia. Art. 37.04(b)(8), supra. Sin embargo, también dejó diáfanamente claro que la antigüedad notificada sería concluyente para todo propósito relacionado con el plan de cesantías. Art. 37.04(b)(10), supra. No existe controversia en torno a que la JREF utilizó el criterio de antigüedad como principio inteligible. No obstante, el Tribunal de Apelaciones concluyó que como la Ley Núm. 7 no dispuso una fecha de corte para computar antigüedad, la JREF no podía establecerla. Eso no es consecuente con los objetivos de la ley ni con los poderes amplios delegados a la JREF.

Como muy bien señala la jurisprudencia federal y local, la delegación de poderes puede hacerse constitucionalmente a base de normas amplias y generales, tal como ocurrió en el caso que nos ocupa. Es que la mejor manera en que se podía respetar el criterio de antigüedad establecido por la Asamblea Legislativa era señalando una fecha uniforme y objetiva de corte para

determinar la antigüedad. Es decir, era poco menos que imposible que la Legislatura hubiese podido prever al dedillo todo el proceso de cesantías. Eso la llevó a legislar normas amplias y generales sobre el procedimiento de cesantías, y a su vez, a delegar a la JREF la facultad de instrumentalizarlo.

IV

Al 17 de abril de 2009, la antigüedad certificada de la señora Sánchez Collazo era de 12 años, 11 meses y 19 días. De igual forma, la antigüedad certificada de la señora Malbert Candelario a la misma fecha era de 13 años, 2 meses y 22 días. Asimismo, la antigüedad certificada del señor Villegas León al 17 de abril de 2009 era de 13 años, 5 meses y 14 días. Por último, la antigüedad certificada del señor Barreto Pérez a la misma fecha era de 13 años y 144 días.

Como se aprecia, ninguno de estos cumplía al 17 de abril de 2009 con el requisito de 13 años y 6 meses de antigüedad para quedar exento del plan de cesantías, según se intimó en la Carta Circular 2009-16. Así pues, no estaban exentos del plan de cesantías y podían ser despedidos al amparo de la Ley Núm. 7, supra.

Como se discutió anteriormente, la Carta Circular Núm. 2009-16 de la JREF es un ejercicio válido de autoridad por parte de la JREF que garantizó un trato equitativo y objetivo a todos los empleados públicos

afectados por la Ley Núm. 7, _supra_. Procede confirmar la actuación administrativa.

V

Por los fundamentos anteriormente expuestos, se expiden los autos de _certiorari_ y se revocan las sentencias del Tribunal de Apelaciones en los recursos CC-2010-1005, CC-2011-260, CC-2011-548 y CC-2011-698. En específico, en los recursos CC-2010-1005, CC-2011-548 y 2011-698 sostenemos la decisión de la CASARH de archivar los casos. En el recurso CC-2011-260 prevalece el laudo de arbitraje.

Se dictará Sentencia de conformidad.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Milagros Sánchez Collazo<br><br>Recurrida<br><br>v.<br><br>Departamento de la Vivienda<br><br>Peticionarios | CC-2010-1005 |
| Departamento de Corrección y Rehabilitación<br><br>Peticionario<br><br>v.<br><br>Diana Malbert Candelario, Representada por la Unión General de Trabajadores (UGT)<br><br>Recurrida | CC-2011-260 |
| Luis Villegas León<br><br>Recurrido<br><br>v.<br><br>Departamento de la Vivienda<br><br>Peticionario | CC-2011-548 |
| Pablo Barreto Pérez<br><br>Recurrido<br><br>v.<br><br>Departamento de Transportación y Obras Públicas y la Junta de Reestructuración Fiscal de Puerto Rico<br><br>Peticionario | |

SENTENCIA

En San Juan, Puerto Rico, a 22 de diciembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se expiden los autos de *certiorari* y se revocan las sentencias del Tribunal de Apelaciones en los recursos CC-2010-1005, CC-2011-260, CC-2011-548 y CC-2011-698. En específico, en los recursos CC-2010-1005, CC-2011-548 y 2011-698 sostenemos la decisión de la CASARH de archivar los casos. En el recurso CC-2011-260 prevalece el laudo de arbitraje.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta disiente con opinión escrita a la que se unen el Juez Presidente señor Hernández Denton y la Juez Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Estrella Martínez no interviene.


Larissa Ortiz Modestti
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Milagros Sánchez Collazo<br>Recurrida<br><br>v.<br><br>Departamento de la Vivienda<br>Peticionarios | CC-2010-1005 | *Certiorari* |
| Departamento de Corrección y Rehabilitación<br>Peticionario<br><br>v.<br><br>Diana Malbert Candelario, representada por la Unión General de Trabajadores (UGT)<br>Recurrida | CC-2011-260 | |
| Luis Villegas León<br>Recurrido<br><br>v.<br><br>Departamento de la Vivienda<br>Peticionario | CC-2011-548 | |
| Pablo Barreto Pérez<br>Recurrido<br><br>v.<br><br>Departamento de Transportación y Obras Públicas y la Junta de Reestructuración Fiscal de Puerto Rico<br>Peticionario | CC-2011-698 | |

Opinión Disidente de la Jueza Asociada señora FIOL MATTA a la cual se unen el Juez Presidente señor HERNÁNDEZ DENTON y la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ

En San Juan, Puerto Rico, a 22 de diciembre de 2011.

Disiento respetuosamente de la decisión que hoy emite la mayoría del Tribunal. En primer lugar, difiero de su conclusión de que los poderes delegados por la Ley Núm. 7 de 9 de marzo de 2009[1] a la Junta de Reestructuración y Estabilización Fiscal (JREF) incluyen la facultad para de computar la antigüedad de los empleados públicos a ser cesanteados a base de una fecha de corte distinta a la fecha de su despido, lo cual conlleva que a estos servidores públicos no se les acredite el tiempo trabajado entre la fecha de corte y su cesantía. Entiendo que, si bien la Ley Núm. 7 delegó poderes amplios a la JREF para poner en vigor la fase de cesantías de la referida Ley, ésta actuó *ultra vires* al ignorar el mandato de dicho estatuto de que el cómputo de la antigüedad debía incluir "**todos** los servicios prestados por los empleados afectados en el servicio público".[2] Al establecer una fecha de corte para dicho cómputo que es anterior a la efectividad de las cesantías, la JREF eliminó, artificialmente y contra el mandato de la Ley Núm. 7, el tiempo trabajado por los recurridos. Si bien la JREF tenía la facultad de establecer una fecha de corte distinta a la de cesantía, que le permitiera llevar a cabo el cómputo de antigüedad ordenado

---

[1] Ley Especial Declarando Estado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico; 3 L.P.R.A. sec. 8791 *et seq.*

[2] (Énfasis suplido) 3 L.P.R.A. sec. 8799(b)(4).

por la ley, estas fechas no podían separarse a tal grado que se contraviniera el mandato del Artículo 37.04(b)(4). No hay duda que con ese mandato el legislador quiso evitar un resultado tan anómalo como en el de los casos de autos, en los que los empleados fueron despedidos, a pesar de que a la fecha de la cesantía cumplían con la antigüedad requerida.

En segundo lugar, aun aceptando la tesis mayoritaria de que, en efecto, la JREF posee la facultad de establecer la fecha de corte de esa manera, la Opinión del Tribunal ignora completamente la controversia de si la JREF actuó de forma arbitraria y caprichosa al escoger una fecha que inevitablemente conlleva la eliminación de varios meses de trabajo del cómputo de antigüedad de los empleados cesanteados. Esto requiere un análisis que debe trascender la controversia sobre delegación de poderes. Vale recalcar que la JREF no produjo alegación y, menos aun, prueba que justificara por qué escogió el 17 de abril de 2009 como fecha de corte mientras estableció que las cesantías serían efectivas el 6 de noviembre de ese año. No hay nada en el expediente, más allá de una alegación de la parte peticionaria de que era necesario adoptar una fecha uniforme para el corte del cómputo, que explique la razón por la que se escogió la misma. El querer adoptar una fecha uniforme no exime a la agencia de tener que explicar, aunque sea mínimamente, por qué escogió esa fecha, máxime cuando esto tiene el efecto de que los recurridos hayan

trabajado por casi siete meses sin que ese esfuerzo se haya incluido en el cálculo de su antigüedad. La mayoría obvia este asunto y se contenta con resolver que la JREF tenía el poder para establecer una fecha de corte debido a la delegación amplia de poderes contenida en la Ley Núm. 7.

## I.

La Ley Núm. 7 establece, entre otros, un plan de emergencia de reducción de gastos por parte del gobierno del Estado Libre Asociado de Puerto Rico. Mediante el Artículo 37 se instituyó la segunda fase del plan de reducción de gastos, la cual conllevó cesantías involuntarias para la eliminación de puestos. Esta fase sería aplicable, con determinadas excepciones, a todas las agencias de la Rama Ejecutiva del Gobierno.[3] Es decir, la Fase II constituye un plan de cesantías de empleados en el servicio público.[4]

En Domínguez Castro v. E.L.A. I, explicamos que "este plan de cesantías se rige por el criterio de antigüedad en el servicio público".[5] Es más, en ese caso hicimos hincapié en que "las cesantías que autoriza la Ley Núm. 7 se rigen única y exclusivamente por el criterio de antigüedad".[6] Esta

---

[3] Sánchez Díaz v. E.L.A., 2011 T.S.P.R. 68, p. 7.

[4] Báez v. Díaz v.E.L.A., 179 D.P.R. 231, 246 (2010).

[5] (Énfasis suplido) 178 D.P.R. 1, 21 (2010).

[6] (Énfasis en original) Id, pp. 62-63, citando el Artículo 37.04(b)(3) de la Ley Núm. 7. En Domíngúez Castro v. E.L.A.

norma surge expresamente del Artículo 37.04((b)(3) de la Ley.[7] Por otra parte, el Artículo 37.04(b)(4) de la Ley Núm. 7 provee una definición de "antigüedad":

> A los fines de determinar antigüedad de empleados afectados se considerarán **todos los servicios prestados por los empleados afectados en el servicio público**, independientemente de las disposiciones de los convenios colectivos, reglamentos, cartas circulares y otros documentos normativos.[8]

Esta disposición de la Ley Núm. 7 es similar a lo establecido por la sección 6.6(9)(a) de la Ley Núm. 184 de 3 de agosto de 2004.[9] Precisamente, en Domínguez Castro v. E.L.A. I., *supra*, hicimos referencia a este hecho: "Es de notar que el procedimiento que establece la [Ley Núm. 7] es bastante similar al que establece la Ley Núm. 184 para este tipo de despido. […] De una lectura de las disposiciones pertinentes de ambos estatutos podemos colegir, en primer lugar, que ambas requieren, para determinar la antigüedad,

---

I, *supra*, enfatizamos en varias ocasiones el hecho de que la antigüedad sería el único criterio a emplearse en la fase de cesantías. *Id*, p. 64.

[7] 3 L.P.R.A. sec. 8799(b)(3): "Las cesantías de los empleados con nombramiento permanente o de carrera se efectuarán observando exclusivamente el criterio de antigüedad, de modo que sean cesanteados en primer término aquellos que tengan menor antigüedad".

[8] (Énfasis suplido) 3 L.P.R.A. sec. 8799(b)(4).

[9] 3 L.P.R.A. sec. 1462e(9)(a): "A los fines de determinar antigüedad, se considerará todo servicio prestado en puestos de las agencias comprendidas en el Sistema".

el que se considere **todo** servicio prestado en el servicio público por los empleados afectados".[10]

Del texto de la Ley Núm. 7 y de nuestras expresiones en Domínguez Castro v. E.L.A. I, *supra*, se desprende con claridad que dicho estatuto ordena que las cesantías de los empleados públicos bajo la Fase II se basen en el criterio exclusivo de la antigüedad y que ésta incluye la totalidad de los servicios prestados por dichos empleados.

La Opinión mayoritaria concluye que al delegarle a la JREF poderes amplios para implementar la Fase II, la Ley Núm. 7 también le otorgó autoridad para computar la antigüedad de los servidores públicos a base de una fecha de corte significativamente anterior a la fecha de cesantía. La consecuencia necesaria es que los recurridos serían cesanteados sin que se le contaran todos los años de servicio para calcular su antigüedad. Para ello, la mayoría dedica gran parte de su análisis a discutir, a grandes rasgos, el desarrollo de la doctrina de la delegación de poderes a las agencias administrativas tanto en los Estados Unidos como en nuestro país.[11] Concluye entonces que la Ley Núm.7 delegó poderes amplios a la JREF y que dicho estatuto contiene principios inteligibles y normas adecuadas para el ejercicio del poder delegado, lo cual es suficiente para

---

[10] (Énfasis suplido) Domínguez Castro v. E.L.A. I, *supra*, p. 63.

[11] Opinión mayoritaria, pp. 28-33.

resolver que la JREF no actuó *ultra vires* al establecer la fecha de corte en el cómputo de antigüedad.

Con todo respeto, este argumento me parece un *non sequitur*. Una delegación amplia de poderes no permite que una agencia actúe contrario a un mandato establecido expresamente en la ley que autoriza dicha delegación. La doctrina de la delegación no autoriza a la agencia a ignorar las disposiciones de la ley que la creó.

No cabe duda que "la delegación de poderes puede hacerse constitucionalmente a base de normas amplias y generales".[12] La amplia delegación de facultades cuasilegislativas y cuasijudiciales a las agencias administrativas "es una de las características sobresalientes del estado moderno".[13] Ahora bien, "la Legislatura no puede delegar poderes arbitrarios e ilimitados a los organismos administrativos".[14] El hecho de que la Asamblea Legislativa haya delegado poderes amplios a una agencia de manera constitucional no significa que dicho poder "es ilimitado ni libre de revisión judicial".[15] Precisamente, la revisión judicial incluye analizar:

> (1) Si la actuación administrativa está autorizada por ley;

---

[12] López v. Junta de Planificación, 80 D.P.R. 646, 661 (1958).

[13] Consejo Arqueológico v. Mun. Barceloneta, 168 D.P.R. 215 (2006).

[14] López v. Junta de Planificación, *supra*, p. 661.

[15] Luan Investment Corp. v. Román, 125 D.P.R. 533, 549 (1990).

(2) Si se delegó el poder de reglamentación;

(3) <u>Si la reglamentación promulgada está dentro de los amplios poderes delegados;</u>

(4) Si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y de las leyes especiales; y

(5) <u>Si la reglamentación es arbitraria o caprichosa.</u>[16]

La agencia "habrá actuado de manera *ultra vires* si se concluye que la regla o reglamento examinado no se aprobó con arreglo a todos estos requisitos".[17] No obstante la existencia de una amplia delegación de poderes, las agencias "deben actuar <u>conforme a su ley habilitadora</u>".[18]

Por eso, no podemos limitar nuestro análisis, como lo hace la Opinión mayoritaria, a si hubo una delegación amplia de poderes a la JREF. Por el contrario, debemos analizar, en primer lugar, si la actuación de la agencia bajo sus amplios poderes delegados <u>no contradice la ley que le hizo tal delegación</u>, pues, en aquellos casos en que la agencia no respete la voluntad del legislador y los límites establecidos en el estatuto que le delegó esos poderes, la agencia estaría actuando *ultra vires*.[19] Una agencia "no puede excederse de lo que la Asamblea Legislativa le delegó".[20] La doctrina de la delegación, por más amplia que

---

[16] (Énfasis suplido) *Id*, p. 550.

[17] <u>Perfect Cleaning v. Cardiovascular</u>, 162 D.P.R. 745, 759 (2004).

[18] (Énfasis suplido) *Id*, p. 762.

[19] *Véase* <u>Consejo Arqueológico v. Mun. Barceloneta</u>, *supra,* pp. 226-231.

[20] <u>Raimundi v. Productora</u>, 162 D.P.R. 215, 223 (2004).

sea, no es ilimitada y, menos aún, permite que la agencia ignore lo que la ley ha establecido expresamente.[21] En segundo lugar, debemos analizar si dicha actuación es arbitraria o caprichosa.

En cuanto a la primera parte del análisis, no hay duda que al establecer una fecha de corte del cómputo de antigüedad <u>distinta a la fecha de cesantía</u>, la JREF ignoró el mandato claro de la ley de que la antigüedad tenía que calcularse contabilizando **todo** el tiempo trabajado por los empleados a ser cesanteados. Si bien la agencia tenía la facultad de determinar los años de servicio requeridos para eximir al empleado de la Fase II, así como la fecha de los despidos, <u>no tenía autoridad para descontar artificialmente del cómputo de antigüedad el tiempo que sería trabajado entre la fecha de corte y la de las cesantías</u>. Por más amplios que hayan sido los poderes delegados a la JREF, la propia Ley Núm. 7 es clara en este asunto y no permitía que la agencia lo ignorara. La fecha de corte adoptada por la JREF, en efecto, enmienda el Artículo 37.04(b)(4) de la Ley Núm. 7 para establecer que en el cómputo de antigüedad no se tomarían en consideración <u>todos</u> los años de servicio, sino la <u>mayoría</u> de éstos. La JREF no tenía autoridad para hacer esto y, por eso, actuó *ultra vires*. La mayoría se equivoca al afirmar que "[n]o existe controversia en torno a que la JREF utilizó el criterio de antigüedad como

principio inteligible",[22] pues, como hemos visto, la JREF redefinió el concepto de antigüedad ignorando el Artículo 37.04(b)(4).

Pero hay más. La decisión de la JREF de establecer el 17 de abril como la fecha de corte, mientras que los despidos serían efectivos en noviembre, <u>sin justificación ni explicación alguna, constituye una actuación arbitraria y caprichosa</u>. En nuestro ordenamiento, tanto la Asamblea Legislativa como las agencias administrativas tienen que justificar sus actuaciones de alguna manera. De no haber tal explicación mínima, se afecta la función revisora de este Tribunal pues no se puede saber si la acción de la agencia "fue arbitraria o caprichosa si no conocemos por qué tomó dicha acción".[23] La <u>única</u> explicación presentada por la agencia es que la fecha de corte fue uniforme para todos los empleados.[24] Hasta el día de hoy, no ha ofrecido explicación alguna de por qué se escogió esa fecha y por qué existe una separación tan marcada entre la fecha de corte y las cesantías. Tal actuación, además de contradecir el mandato explícito de la Ley Núm. 7, es irrazonable y no debe sostenerse.

---

[21] *Véase* <u>Caribe Comms., Inc. v. P.R.T.Co.</u>, 157 D.P.R. 203, 212 (2002).

[22] Opinión mayoritaria, p. 35.

[23] <u>Asoc. Fcias. Com. v. Depto. de Salud</u>, 156 D.P.R. 105, 127 (2002).

[24] Alegato de la Procuradora General, CC-2010-1005, p. 14.

II.

Por las razones anteriormente expuestas, es inescapable la conclusión de que la JREF se excedió en sus poderes al establecer una fecha de corte de antigüedad pues, al no tomar en consideración todos los servicios prestados por los empleados para determinar si cumplían con el periodo requerido para estar excluidos de la Fase II, violó el mandato del Artículo 37.04(b)(4) de la Ley Núm. 7. Igualmente inescapable es que dicha actuación por parte de la JREF es, además, arbitraria, caprichosa e irrazonable. En primer lugar, es, de por sí, irrazonable el que unos empleados fueran despedidos porque no cumplían con el tiempo mínimo requerido al 17 de abril, cuando sí lo cumplían al momento en que fueron cesanteados. En segundo lugar, confrontada con tal anomalía, la agencia no ha presentado explicación o justificación sustantiva mínima alguna que nos permita analizar su proceder. En nuestro ordenamiento jurídico, los poderes gubernamentales tienen que justificar el empleo de su poder. En nuestro sistema, "*the King can do wrong*".

Liana Fiol Matta
Jueza Asociada